1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                       ----oo0oo----

11  BERNARD JOSEPH ROSA, JR.,
                                    NO. CIV. S-04-945 WBS PAN
12          Plaintiff,

13      v.                          MEMORANDUM AND ORDER
                                    RE: PLAINTIFF'S MOTION FOR
14                                  SUMMARY JUDGMENT AND
                                    DEFENDANTS' MOTION TO DISMISS
15  STATE OF CALIFORNIA,
    CALIFORNIA BOARD OF
16  ACCOUNTANCY, CAROL SIGMANN,
    GREGORY P. NEWINGTON, LAWRENCE
17  KNAPP, BILL LOCKYER, JOEL
    PRIME, RONALD DEIDRICH,
18  MICHAEL R. GRANEN, and STEPHEN
    J. SMITH,
19
            Defendants.
20

21                       ----oo0oo----

22          Plaintiff, a pro se litigant, brings claims against the

23  State of California; the California Board of Accountancy ("CBA");

24  Carol Sigmann, Gregory P. Newington, and Lawrence Knapp as

25  individuals and as agents and employees of the CBA; Bill Lockyer

26  as Attorney General of California; Stephen J. Smith as

27  Administrative Law Judge; and Joel Prime, Ronald Deidrich, and

28  Michael R. Granen as individuals and as agents and employees of

                                1

the California Attorney General.  Plaintiff alleges violations of
42 U.S.C. §§ 1983, 1985, and 1986; violations of the California
Constitution; California Government Code § 1222; California
Business and Professions Code § 6068; California Civil Code §
52.1; intentional infliction of emotional distress; negligent
infliction of emotional distress; and defamation.  He also asks
for reinstatement of his Certified Public Accountant ("CPA")
license, general damages in the amount of $2,000,000, punitive
damages against each defendant in the amount of $1,500,000, costs
of suit, and attorneys' fees.

Jurisdiction is predicated upon 28 U.S.C. §§ 1331
(federal question) and 1367 (supplemental jurisdiction).
Plaintiff moves for summary judgment on all of his claims
pursuant to Federal Rule of Civil Procedure 56.  Defendants move
to dismiss all plaintiff's claims pursuant to Federal Rule of
Civil Procedure 12(b)(6).

I.   <u>Factual and Procedural Background</u>[1]

Plaintiff received his CPA certificate in 1969.  (First
Am. Compl. ¶ 7).  In 1974, after working for several different
employers, he became a sole practitioner providing professional
accounting services.  Around 1983, plaintiff developed what he
refers to as a "tax strategy" to reduce and in some cases
eliminate the self-employment tax.  One of plaintiff's former
clients complained to the CBA, and the CBA commenced an action
against the plaintiff.  (<u>Id.</u> ¶ 7).

After the CBA commenced action against plaintiff, the

---

[1]   Unless otherwise noted, all facts in this section are
taken from plaintiff's First Amended Complaint.

1  Attorney General's Office and the CBA began negotiations designed
2  to settle the action.  (Id. ¶ 8).  Sometime in November 1993,
3  plaintiff orally agreed to a stipulation presented by defendant
4  Joel Primes, Supervising Deputy Attorney General.  (Id. at 19
5  n.iv).  The exact provisions of the stipulation are not explained
6  by plaintiff.  In December 1993, plaintiff reassessed his
7  decision and refused to agree to the stipulation unless any and
8  all references to "fraud, dishonesty, and gross negligence" were
9  removed.  (Id.)  Plaintiff alleges that defendant Primes agreed
10 to make the changes if plaintiff signed a blank signature page
11 which Primes would later attach to the modified stipulation.
12 When plaintiff expressed his reluctance to sign a blank signature
13 page, Primes allegedly threatened to withdraw the offer to settle
14 the case.  (Id. ¶ 11).  Plaintiff relented, signed the signature
15 page, and faxed it to Primes.  (Id. ¶ 8).

16      In April 1994, plaintiff received the modified
17 stipulation with his attached signature.  (Id. ¶ 12).  He alleges
18 that he assumed all the terms were correct, and did not become
19 aware that the agreed-upon changes had not been made until he
20 reviewed the stipulation sometime around November 1994.  (Id. ¶¶
21 9, 13).  Plaintiff alleges that one of the defendants told him
22 the matter would be resolved at a probation hearing.[2]  At this
23 probation hearing, plaintiff alleges that the judge "refused" to
24 hear plaintiff's attempts to explain the situation with the

25

26      [2]   With the exception of Joel Primes, plaintiff does not
   explain the individual involvement of any of the named defendants
27 in his complaint.  He refers only to "defendant" and "defendants"
   without explaining to which defendant or defendants he is
28 referring.

1  stipulation.[3]  (Id. ¶ 15).  In December 1995, plaintiff's CPA

2  certificate was revoked.  (Id. ¶ 16).

3        It appears that approximately four years passed before

4  plaintiff decided to petition the CBA for reinstatement of his

5  license.  (See id. ¶¶ 16-19).  In October 1999, this petition was

6  denied by the CBA, which allegedly still relied at least in part

7  on the disputed stipulation.  The CBA allegedly stated that it

8  was too late for any action and that plaintiff had not provided

9  adequate proof of rehabilitation.  (Id. ¶ 19).  Plaintiff's

10 petition for reinstatement was again denied in March of 2001,

11 July of 2002, sometime in 2003, and March of 2004.  All of these

12 denials were allegedly for the same reasons.  (Id. ¶¶ 20-22).

13       On May 10, 2004, plaintiff filed a complaint and

14 initiated the present lawsuit.  The matter was referred to United

15 States Magistrate Judge Peter A. Nowinski pursuant to 28 U.S.C.

16 §§ 636, et seq., and Local Rule 72-302.  Defendants responded to

17 plaintiff's complaint on June 14, 2004 with a motion to dismiss,

18 and an amended motion to dismiss on June 21, 2004.  Plaintiff

19 filed a first amended complaint ("FAC") on July 14, 2004,

20 rendering the motion to dismiss moot.  Without filing an answer,

21 defendants renewed their motion to dismiss on August 9, 2004, and

22 then filed an amended motion on August 10, 2004.  On April 14,

23 2005, plaintiff filed a motion for summary judgment.

24       The magistrate judge issued findings and

25 recommendations recommending that defendants' motion to dismiss

26 _____

27       [3]   The court assumes for the purposes of these motions
   that the judge referred to in the complaint is defendant Stephen
28 J. Smith, the Administrative Law Judge named in plaintiff's
   complaint.

1  be granted and that plaintiff's motion for summary judgment be

2  denied.  (June 6, 2005 Magistrate Judge's Findings and

3  Recommendations).  On June 15, 2005, plaintiff filed objections

4  to the findings and recommendations.  On June 28, 2005,

5  defendants filed a response to plaintiff's objections to the

6  findings and recommendations.  The court reviews both plaintiff's

7  motion for summary judgment and defendants' motion to dismiss <u>de</u>

8  <u>novo</u>.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); Local

9  Rule 72-304.[4]

10  II.  <u>Discussion</u>

11        A.   <u>Plaintiff's Motion for Summary Judgment</u>

12            The court must grant summary judgment to a moving party

13  "if the pleadings, depositions, answers to interrogatories, and

14  admissions on file, together with the affidavits, if any, show

15  that there is no genuine issue as to any material fact and that

16  the moving party is entitled to judgment as a matter of law."

17  Fed. R. Civ. P. 56(c).  The party adverse to a motion for summary

18  judgment may not simply deny generally the pleadings of the

19  movant; the adverse party must designate "specific facts showing

20  that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);

21  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  Simply put, "a

22  summary judgment motion cannot be defeated by relying solely on

23  conclusory allegations unsupported by factual data."  <u>Taylor v.</u>

24

_____

25        [4]   Plaintiff objects to defendants' response to his
   objections to the magistrate judge's findings and recommendations
26  as untimely.  (<u>See</u> Pl.'s Objections to Defs.' Untimely Response
   to Objections to Magistrate Judge's Findings & Recommendations at
27  1-2).  However, this objection is moot because the court need not
   rely on any of the arguments in the defendants' response to
28  decide the motions before it, which it reviews <u>de</u> <u>novo</u>.

1  List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The nonmoving party
2  must show more than a mere "metaphysical doubt" as to the
3  material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio, 475
4  U.S. 574, 587 (1986).

5          Plaintiff essentially makes two arguments:  First,
6  defendants' motion to dismiss was untimely.  Plaintiff does not
7  explain why summary judgment would be warranted if defendants'
8  motion were untimely.  Presumably, the argument would be that the
9  court should disregard the untimely motion and grant a default
10 judgment against all defendants for failure to respond to
11 defendant's FAC.  Second, plaintiff argues that because
12 defendants' motion to dismiss fails to deny any of the
13 allegations in plaintiff's FAC, the court should deem defendants
14 to have admitted all the allegations in plaintiff's FAC, and
15 enter judgment in plaintiff's favor as a matter of law.

16          i.   The Motion to Dismiss Was Not Untimely

17         Plaintiff argues, without citing any order or
18 authority, that defendant's response to his first amended
19 complaint was due "on or before July 22, 2004," which was ten
20 (10) days after the filing of the amended complaint.  Were this
21 true, it would be strange indeed, since the Ninth Circuit has
22 explicitly held that "a motion under Federal Rule of Civil
23 Procedure 12(b) [may be filed] any time before the responsive
24 pleading is filed."  Aetna Life Ins. Co. v. Alla Med. Servs.,
25 Inc., 855 F.2d 1470, 1474 (9th Cir. 1988)(emphasis added).  In
26 reversing the district court that found a Rule 12(b)(6) motion to
27 be untimely, the Aetna court held that because "[t]he [Rule]
28 12(b)(6) motion to dismiss was filed . . . before an answer to

6

the complaint," the motion was <u>timely</u>, and the district court had erred in ruling otherwise.  <u>Id.</u>  Here, the motion to dismiss was filed before the filing of any answer.  Thus, as a matter of law, the motion to dismiss was timely.

ii.   <u>It Would Be Improper to Deem Plaintiffs'</u>
<u>Allegations Admitted by Defendants</u>

Plaintiff argues that since defendants have not filed an answer, they have not denied any of the allegations in his complaint, and that defendants must therefore be deemed to have admitted all the allegations in plaintiff's FAC.  This is not the law.  In fact, other district courts in this circuit have denied motions for summary judgment in nearly identical situations.  In <u>Batdorf v. Trans Union</u>, a pro se plaintiff moved for summary judgment on three causes of action after the defendant filed a motion to dismiss on the other causes of action in the complaint, contending that the defendant had admitted the  allegations of his complaint relating to the claims he did not move to dismiss by failing to file an answer.  2000 U.S. Dist. LEXIS 6796, at *11-12 (N.D. Cal. May 16, 2000).  The district court denied the motion, stating that the filing of a motion to dismiss enlarges the time for a defendant to respond to the entire complaint, including the causes of action it did not move to dismiss.  <u>Id.</u> at 12.  Likewise, in <u>Terry v. Internal Revenue Service</u>, another district court denied a similar "motion for default judgment or in the alternative motion for summary judgment" brought by a plaintiff, finding that because the defendants filed a motion to dismiss pursuant to Rule 12(b), they were not yet required to file an answer.  1997 U.S. Dist. LEXIS 17025, at *6-7 (D. Az.

7

1    Sept. 30, 1997).   The reasoning of these cases is persuasive.

2    Therefore, the court follows its sister courts and denies

3    plaintiff's motion for summary judgment.

4         B.   <u>Defendants' Motion to Dismiss</u>

5         Defendants move to dismiss under Federal Rule of Civil

6    Procedure 12(b)(6), arguing that plaintiff can prove no set of

7    facts which would entitle him to relief.   In ruling on such a

8    motion, the court must assume all of plaintiff's allegations are

9    true and construe the complaint in the light most favorable to

10   plaintiff.  <u>United States v. City of Redwood City</u>, 640 F.2d 963,

11   966 (9th Cir. 1981).   However, the court need not assume the

12   truth of legal conclusions cast in the form of factual

13   allegations.  <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624

14   (9th Cir. 1981).   Defendants base their motion on several

15   arguments and authorities, many of which they contend

16   independently warrant dismissal.

17            i.   <u>The Younger Abstention Doctrine Forbids the Court</u>

18                 <u>From Interfering in State Administrative</u>

19                 <u>Proceedings</u>

20        Plaintiff seeks, among other things, reinstatement of

21   his CPA license.   The administrative proceeding for seeking

22   reinstatement is, however, judicial in nature.   It involves a

23   hearing before a state administrative law judge, and at such

24   hearing, plaintiff is required to show rehabilitation sufficient

25   to warrant reinstatement of his CPA license.   Should plaintiff be

26   dissatisfied with the results of these state administrative

27   remedies, he can seek relief in state court by way of a petition

28   for writ of mandate.   Cal. Civ. Proc. Code § 1094.5.

1    The nature of the proceeding is important because the
2  Younger abstention doctrine states that except in exceptional and
3  extremely limited circumstances, a federal court must not
4  intervene by way of injunction or declaration in a state criminal
5  proceeding or administrative proceeding that is judicial in
6  nature.  Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,
7  477 U.S. 619, 626 (1986); Middlesex County Ethics Comm. v. Garden
8  State Bar Ass'n, 457 U.S. 423, 432-34 (1982); Younger v. Harris,
9  401 U.S. 37, 56 (1971); cf. Geiger v. Jenkins, 401 U.S. 985
10 (1971)(summarily affirming district court which dismissed claims
11 under 42 U.S.C. §§ 1983, 1985, and 1988 to abstain from
12 interfering with medical license revocation proceedings).  The
13 policy underlying this doctrine has been described as:

> [A] proper respect for state functions, a recognition of the
> fact that the entire country is made up of a Union of
> separate state governments, and a continuance of the belief
> that the National Government will fare best if the States
> and their institutions are left free to perform their
> separate functions in their separate ways.

18 Middlesex, 457 U.S. at 431 (citing Younger, 401 U.S. at 44).

19    Because the proceeding for reinstatement of plaintiff's
20 CPA license is judicial in nature, and generally to be obtained
21 from the state, the Younger abstention doctrine and its
22 underlying policies of respect for state authority over state
23 matters militate against entertaining plaintiff's request for
24 reinstatement of his CPA license.  Therefore, the court will
25 abstain from reaching this issue.
26 ///
27 ///
28 ///

9

        ii.  Eleventh Amendment Immunity Bars Plaintiff's
            Federal Claims Against the State of California and
            the CBA

States and state agencies are immune from suit in federal court by virtue of the Eleventh Amendment to the United States Constitution. Seminole Tribe of Fla v. Florida, 517 U.S. 44, 53 (1996); Belanger v. Mader Unified Sch. Dist., 963 F.2d 248, 250 (9th Cir. 1992)(holding that Eleventh Amendment immunity extended to school district as state agency). The type of relief sought is irrelevant, as the Eleventh Amendment does not exist solely to prevent federal court judgments that must be paid out of a state's treasury, but to prevent the indignity of subjecting a State to the judicial process at the behest of a private individual. Seminole, 517 U.S. at 58. This immunity can be abrogated, but only where Congress has acted with clear and unequivocal intent to abrogate the immunity, and where Congress acted pursuant to a valid exercise of its power. Id. at 55.

There is no "clear and unequivocal" language in 42 U.S.C. §§ 1983, 1985, or 1986 to abrogate Eleventh Amendment immunity. See also Quern v. Jordan, 440 U.S. 332, 341 (1979)("§ 1983 does not abrogate the State's Eleventh Amendment immunity."). Therefore, the State of California and the CBA, as an agency of the State of California, are both immune from suit. See Carberry v. State Bd. of Accountancy, 28 Cal. App. 4th 770, 772 (1994)(defining California Board of Accountancy as "the state agency empowered to license certified public accountants") (emphasis added). Accordingly, all of plaintiff's claims against defendants the State of California and the California Board of

Accountancy are barred by the Eleventh Amendment.

iii. <u>Plaintiff's Federal Claims Against the Attorney
General and His Employees are Time-Barred</u>

To the extent that Eleventh Amendment immunity does not
bar plaintiff's claims brought against the Attorney General and
his employees in their individual capacities, such claims are
time-barred.  Federal courts turn to state law on personal injury
claims for statutes of limitations in actions brought under 42
U.S.C. §§ 1983 and 1985. <u>Burnett v. Grattan</u>, 468 U.S. 42, 48-49
(1984); <u>see also</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-67
(1985)(applying state personal injury statute of limitations to
action filed under § 1983).  Prior to 2002, the statute of
limitations on personal injury actions in California was one (1)
year.  Cal. Civ. Proc. Code § 340(c)(2001).  Since all of the
allegations regarding plaintiff's claims against these defendants
under §§ 1983 and 1985 refer to actions taken before 2002,
California's previous one-year statute of limitations applies to
them.  Plaintiff's claims under § 1986 have an explicit one (1)
year statute of limitations.  42 U.S.C. § 1986 ("But no action
under the provisions of this section shall be sustained which is
not commenced within one year after the cause of action has
accrued.").

According to plaintiff's complaint, the
misrepresentations and misdeeds by defendant Primes and other
members of the Attorney General's office occurred in 1994 and
earlier.  (Compl. ¶¶ 8-12, <u>id.</u> at 19 n.iv).  There are no factual
allegations implicating anyone from the Attorney General's office
after 1994.  Nor does plaintiff argue or present any facts to

11

suggest that the statute of limitations was tolled.  Further, it appears from plaintiff's complaint that since the stipulation was issued in 1994, plaintiff has been dealing solely with the CBA in his attempts to get his CPA license reinstated.  Thus, all of plaintiff's federal claims against defendants Lockyer, Primes, Diedrich, Granen, and Werner are barred by the relevant statutes of limitations, whether such claims are brought against them in their official or individual capacities.

iv.  Plaintiff's Claims Against Agents of the CBA and
     the Attorney General are also Barred by
     Prosecutorial Immunity

Although the Eleventh Amendment does not protect the Attorney General, his agents, and the agents of the CBA to the extent they are sued in their individual capacities, prosecutorial immunity does.  Kleinman v. Multnomah Cty., 2004 U.S. Dist. LEXIS 21466, at *16-17 (D. Or. Oct. 15, 2004)(citing Imbler v. Pachtman, 424 U.S. 409, 419 (1976)).  "Absolute immunity extends to agency officials when they preside over hearings, initiate agency adjudication, or otherwise perform functions analogous to judges and prosecutors."  Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999)(citing Butz v. Economou, 438 U.S. 478, 514-15 (1978)).  Intent and motivation is relevant to qualified immunity, but irrelevant to absolute immunity; absolute immunity defeats a suit regardless of the underlying intent as long as the actions were closely associated with the judicial process.  Imbler, 424 U.S. at 419; Romano, 169 F.3d at 1186. "Prosecutorial immunity extends to the process of plea bargaining as an integral part of the judicial process."  Briley v. State of

12

1  *California*, 564 F.2d 849, 856 (9th Cir. 1977).  Additionally, the

2  Supreme Court looks to the "nature of the function performed, <u>not</u>

3  the identity of the actor who performed it."  <u>Romano</u>, 169 F.3d at

4  1186 (emphasis added); <u>see also</u> <u>Hirsh</u>, 67 F.3d at 715(holding

5  that California Attorney General was entitled to absolute

6  immunity for his limited role in State Bar disciplinary system).

7       The hearings before the CBA and an administrative law

8  judge are, at a minimum, quasi-judicial.  The actions taken by

9  the CBA and its agents and employees in revoking plaintiff's

10  license, and later denying his application for reinstatement,

11  were closely associated with this process.  "[A]gency officials

12  performing certain functions analogous to those of a prosecutor

13  should be able to claim absolute immunity with respect to such

14  acts."  <u>Butz</u>, 438 U.S. at 515.  Since these defendants were

15  behaving as prosecutors in an adjudicative process, plaintiffs'

16  claims against defendants Sigmann, Newington, and Knapp are

17  barred by prosecutorial immunity.

18       Further, all of the allegations of misconduct

19  plaintiffs makes against the agents and employees of the Attorney

20  General's office involve actions undertaken in connection with

21  the prosecution of plaintiff and the eventual revocation of his

22  CPA license.  The "stipulation" that plaintiff alleges was

23  fraudulent was essentially a plea bargain.  Thus, even if

24  plaintiffs' claims against the Attorney General and his employees

25  were not time-barred, they would be barred by prosecutorial

26  immunity, notwithstanding the capacity in which they were named

27  as defendants.  <u>See</u> <u>Briley</u>, 564 F.2d at 856.

28  ///

1            v.   Plaintiff's Claim Against Administrative Law Judge

2                 Smith is Barred by Absolute Judicial Immunity

3            It is well-established that judges and those performing

4   judge-like functions are absolutely immune from damage liability

5   for acts performed in their official capacities.  Stump v.

6   Sparkman, 435 U.S. 349, 355-56 (1978); Ashelman v. Pope, 793 F.2d

7   1072, 1075 (9th Cir. 1986).  This doctrine applies to

8   administrative law judges.  Butz, 438 U.S. at 513-14.  The

9   factual allegations involving defendant Smith concern only his

10  role as a judge in the administrative adjudicative process.

11  Thus, plaintiff's claims against defendant Smith are barred by

12  judicial immunity.

13          vi.  Further Amendments Would Be Futile

14          Generally, leave to amend should be granted when a

15  motion to dismiss is granted.  Schreiber Dist. Co. v. Serv-Well

16  Furniture Co., 806 F.2d 1393, 1401 (1986).  However, if the court

17  determines that the allegation of other facts consistent with the

18  challenged pleading could not possibly cure the deficiency, the

19  court may dismiss without leave to amend.  Id.  Here, no other

20  facts that could be alleged consistent with plaintiff's FAC would

21  defeat defendants' multiple immunities and the relevant statutes

22  of limitations.  Therefore, the court will dismiss all of

23  plaintiff's federal claims with prejudice.

24     C.  Remaining State-Law Claims

25          The court has supplemental jurisdiction over

26  plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

27  Under 28 U.S.C. § 1367(c)(3), a district court may decline to

28  exercise supplemental jurisdiction over state-law claims where

                              14

1   the court has dismissed all claims over which it has original

2   jurisdiction.  Voigt v. Savell, 70 F.3d 1552, 1565 (9th Cir.

3   1995).  "In the usual case in which all federal-law claims are

4   eliminated before trial, the balance of factors to be considered

5   under the pendent jurisdiction doctrine – judicial economy,

6   convenience, fairness, and comity - will point toward declining

7   to exercise jurisdiction over the remaining state-law claims."

8   Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

9   The balance of factors generally indicates that a case belongs in

10  state court when the federal-law claims have dropped out of the

11  lawsuit in its early stages and only state-law claims remain.  Id.

12          Here, plaintiff's federal claims will all be dismissed

13  prior to trial.  Because the court was able to decide plaintiff's

14  federal claims without reaching the issues underlying plaintiff's

15  state-law claims remaining in this case, the court will decline

16  to exercise supplemental jurisdiction over the state-law claims

17  pursuant to 28 U.S.C. § 1367(c)(3).

18          IT IS THEREFORE ORDERED that:

19          (1) plaintiff's motion for summary judgment be, and the

20  same hereby is, DENIED;

21          (2)  defendants' motion to dismiss be, and the same

22  hereby is, GRANTED;

23          (3)  plaintiff's claims under 42 U.S.C. §§ 1983, 1985,

24  and 1986 be, and the same hereby are, DISMISSED WITH PREJUDICE;

25  and

26          (4) plaintiff's state-law claims be, and the same

27  ///

28  ///

15

1  hereby are, DISMISSED pursuant to 28 U.S.C. § 1367(c)(3).

2  DATED:  August 5, 2005

3

4

5  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16